UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

HENRY J. CLARK

VERSUS

SAXON MORTGAGE COMPANY, ET AL.

CIVIL ACTION

NO. 11-cv-65-JJB

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are motions for summary judgment filed by defendants Saxon Mortgage Services, Inc. (Doc. 55),[1] Experian Information Solutions, Inc. (Doc. 59), Trans Union L.L.C. (Doc. 60), and Equifax Information Services, L.L.C. (Doc. 63) against plaintiff Henry J. Clark. Clark filed a *pro se* opposition to Saxon's motion (Doc. 70), and Saxon filed a motion to strike (Doc. 73) Clark's opposition memo in addition to a reply brief (Doc. 74). After the Court provided Clark time to obtain legal representation (*see* Doc. 78), Clark opposed the motion to strike (Doc. 79) and filed a sur-reply to Saxon's motion (Doc. 80).[2] Saxon filed yet another brief responding to Clark's sur-reply due to Clark's apparent assistance from counsel. (Doc. 83). Oral argument is unnecessary. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

I.

The following facts are undisputed. Clark executed two promissory notes, along with a separate mortgage securing each note, in late June and early July 2006. Account No. 1282 was secured by property located at 1125 Mavis Drive in Baton Rouge, Clark's primary residence. Account No. 8483 was secured by property located at 8736 Elvin Drive, an investment rental property Clark divided into four units. Beginning November 1, 2007, Saxon Mortgage Services became the servicer of both of Clark's mortgages.

---

[1] The suit incorrectly names Saxon Mortgage Company as defendant.
[2] Clark has not filed oppositions to the other summary judgment motions, so the Court treats his arguments in his opposition to Saxon's motion as applicable to all the motions.

Each mortgage contains identical language authorizing the lender to apply funds received from Clark to cover delinquent monthly payments, and the late charges incurred as a result of the delinquency, if such funds were sufficient to cover both. If multiple monthly payments were outstanding, the language permits the lender to "apply any payment received from [Clark] to the repayment of the [monthly payments] if, and to the extent that, each payment can be paid in full." (Acct. 1282, Doc. 56-12, at 4, ¶ 2; Acct. 8483, Doc. 56-10, at 4, ¶ 2).

Clark has since paid off Acct. 8483, and it is not the subject of this case. However, Clark has been delinquent on several payments on Acct. 1282 and has been in default, according to Saxon, since September 1, 2009.

Clark's December 10, 2007 statement on Acct. 1282 shows a delinquent payment of $1,206.26 was already due and owing. (Doc. 56-16; Affidavit of Athena Walker, Doc. 56-8, at 6, ¶ 16; Clark Payment History, Doc. 56-26). It also shows he owed the same amount upcoming on January 1, 2008. Clark's attempts to pay both those amounts were returned for insufficient funds on January 16, 2008. (Payment History on Acct. 1282, Doc. 56-26, at 2, ll. 3-4; Walker Aff., Doc. 56-8, at 7, ¶ 20; *see also* Clark Bank Statement, Doc. 56-6 (showing six different NSF transactions from January 2008)). As of February 11, 2008, Clark's account was over 30 days delinquent, and Saxon reported the delinquency to the three national credit reporting agencies. (Walker Aff., Doc. 56-8, at 8, ¶ 30). The next day, Saxon sent Clark a letter detailing his delinquency and demanding the default amount of $2,515.59. (Feb. 12 Default Letter, Doc. 56-17; *see also* Feb. 18 Statement, Doc. 56-18 (showing two months of payments in delinquency)). Clark eventually mailed a certified bank check in the required amount on March, 7, 2008, which Saxon received and applied to Acct. 1282 on March 11, 2008. (Check No. 668754336, Doc. 70-1, at 52; Walker Aff., Doc. 56-8, at 9, ¶ 38). That check had a handwritten notation directing

Saxon to apply it to Acct. 1282. By then, though, his delinquency had reached 60 days, and Saxon had already reported that to the credit agencies. (Walker Aff., Doc. 56-8, ¶ 37).

Meanwhile, Clark was also having problems paying his other account, Acct. 8483. Just like Acct. 1282, Clark's December 2007 and January 2008 payments on Acct. 8483 were rejected for insufficient funds. (Walker Aff., Doc. 56-8, at 10, ¶ 47; Clark Payment History, Doc. 56-27, at 2, ll. 8, 11). Saxon delivered a letter of default indicating Clark owed them $2,465.26 in default. (Jan. 21 Default Letter, Doc. 56-32; *see also* Feb. 5 Default Letter, Doc. 56-33 (adding $7 to default amount)). Clark sent to Saxon a certified bank check on February 6, 2008 in the amount of $2,431.46, which Saxon received on February 12, 2008. (Check No. 706671679, Doc. 70-1, at 51; Walker Aff., Doc. 56-8, at 11, ¶ 49). This check did not have any notation describing to which account it was intended to be applied. Saxon applied this check to Acct. 8483.

Clark filed suit against Saxon in Louisiana state court on February 19, 2010, alleging negligence. (*See* Original Petition, Doc. 1-1, at 4-6). On January 12, 2011, he added defendants Equifax, Trans Union, and Experian and added claims under the federal Fair Credit Reporting Act, the Louisiana Unfair Trade Practices Act, and state law claims of fraud. (*See* First Amended Petition, Doc. 1-1, at 35-39). Defendants then removed this action to federal court on February 7, 2011. (Doc. 1). On March 8, 2011, Clark sought, and was eventually granted, leave to file his second amended complaint against the defendants, alleging the same causes of action under the Fair Credit Reporting Act and Louisiana law. (*See* Second Amended Complaint, Doc. 31).

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

Clark sues under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, Louisiana negligence and fraud law, and the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401 *et seq.*

The FCRA establishes numerous measures to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). To do so, Congress required that "consumer reporting agencies adopt reasonable procedures" for credit reporting, with due "regard to the confidentiality, accuracy, relevancy, and proper utilization of [consumer] information" provided to the agencies. 15 U.S.C. § 1681(b). FCRA imposes statutory duties on, among others, a "consumer reporting agency," defined as a person who "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties…." 15 U.S.C. § 1681a(f). Similarly, the FCRA defines "consumer report" as a "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living…." 15 U.S.C. § 1681a(d)(1). It is undisputed that the three national consumer reporting agencies made defendants here—Equifax, Experian, and Trans Union—fit within the FCRA's definition for both purposes, and Clark admits Saxon does not qualify for that definition. (Memo. in Opp., Doc. 70, at 1, 3).

While Clark's vague allegations have never specified with particularity the provisions of the FCRA he alleges have been violated, the Court reads his complaint and subsequent filings as raising a claim of unreasonable investigation against Saxon under § 1681s-2(b)[3] and claims of

---

[3] This section imposes duties on furnishers of information to consumer reporting agencies, like Saxon, to, *inter alia*, investigate the disputed item and report the results to the agencies. 15 U.S.C. § 1681s-2(b). Unlike the freestanding duty to report accurate information in § 1681s-2(a), this section can be privately enforced. 15 U.S.C. § 1681s-2(c)

unreasonable procedures and unreasonable reinvestigation against the three national credit agencies under §§ 1681e(b)[4] and 1681i(a)(1)(A).[5]

It is undisputed that Saxon merely provided information about Clark to the three national credit agencies, but to date has not taken an "adverse action" against Clark within the meaning of the FCRA's definition of that term in 15 U.S.C. § 1681a(k)(1).

IV.

Clark has filed neither a verified complaint nor an affidavit, and the only evidence he has submitted in support of his claim is the documentation attached to his opposition memo. (*See* Doc. 70). The crux of Clark's case is that Saxon unreasonably applied a check with certified funds to Acct. 8483 instead of Acct. 1282, causing a greater delinquency on his account and resulting in further adverse credit reporting.

But the Court has great trouble accepting that argument. Clark's first check, No. 706671679 in the amount of $2,431.46, was created on February 6, 2008. The timing permits a clear inference that Clark caused its issuance in response to the two default letters regarding Acct. 8483, the second of which was issued on February 5, only a day before the check was created. At the time he created Check No. 706671679, he had not been put on notice that Acct. 1282 was in default. The default letter on that account was not issued until February 12, 2008. Moreover, Saxon's business records show that on February 6, 2008, Clark had called Saxon and

---

and (d); *see, e.g., Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 509-10 (D. Md. 2004) (finding private cause of action under this section).

[4] "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

[5] This section provides, in pertinent part:
> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency … the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate….

15 U.S.C. § 1681i(a)(1)(A).

stated he was at the bank but really didn't know which mortgage payment he put in the mail. (Loan Servicing History, Doc. 56-28, at 7; Loan Account History, Doc. 56-24, at 6; Walker Aff., Doc. 56-8, at 8, ¶ 27). Similarly, Clark admits he did not indicate on that check to which account he intended it to apply. (Clark Deposition, Doc. 59-5, at 7:13-23). While Clark contends he attempted to get Saxon to transfer the account credit from Acct. 8483 to Acct. 1282 once he learned to which account the check had been credited, he cites no evidence in support of his position.[6] Moreover, both his loan agreements allowed the loan servicer to credit his payment to a delinquent account, and absent any evidence Clark directed Saxon as to which account to apply the funds, Saxon justifiably credited those funds to the account Clark had already been put on notice as delinquent. The Court therefore detects nothing improper about that action.

As an element of any claim against Saxon or the national credit agencies,[7] Clark must first show, *inter alia*, an inaccurate report from Saxon to one of those agencies. *See, e.g., Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895-96 (5th Cir. 1998) (requiring inaccuracy or misleading information as an element of an unreasonable procedure claim against a consumer reporting agency under § 1681e(b)); *Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 449 (5th Cir. 1988) (suggesting issuance of an erroneous credit report to an institution dealing with the plaintiff-consumer is a precondition to invoking the FCRA); *Morris v. Trans Union LLC*, 420 F.Supp.2d 733, 751 (S.D. Tex. 2006) (finding "case law and common sense dictate that a consumer may bring a claim under the FCRA for negligent noncompliance [with the duty to investigate a consumer's dispute with a credit report] only when

---

[6] At that time, *both* Acct. 8483 *and* Acct. 1282 were in default. Thus, even if Clark would have succeeded in getting the funds from Check No. 706671679 switched into Acct. 1282, then Acct. 8483 would still have been in default, and Saxon would likely have had the right to report him to the credit agencies anyway.

[7] The Court does not read Clark's complaint to include a disclosure claim under 15 U.S.C. §§ 1681g or 1681h, and since Clark has not to date suffered an adverse action, he cannot yet bring a claim under § 1681m.

7

an inaccuracy has been included" on the report under § 1681i); 15 U.S.C. § 1681s-2(a) (imposing accuracy requirements on providers of information to consumer reporting agencies). *See also* 15 U.S.C. § 1681s-2(d) (limiting enforcement of restrictions on information providers to consumer reporting agencies to governmental actions described in § 1681s).

Absent any evidence from Clark showing a reporting inaccuracy, even the liberal interpretation Clark's *pro se* filing deserves cannot create a genuine dispute of material fact. Thus, because Clark admits Saxon is not a "consumer reporting agency" within the meaning of the FCRA and he cannot show Saxon's reporting of his delinquencies were inaccurate, his claim against Saxon under the FCRA must fail. *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008).[8] Likewise, because he cannot show a factual inaccuracy in the reporting, his FCRA claims for unreasonable procedures and reinvestigations against the national consumer reporting agencies must also fail. *Id.*; *see also Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (following *DeAndrade*); *Schweitzer v. Equifax Information Services, Inc.*, 441 Fed.Appx. 896, 904 n. 9 (same).

Moreover, his skeletal state law claims must also fail for several reasons. First, his negligence claims against all defendants fail for the same reasons his FCRA claims fail: the factually accurate actions taken by the defendants show they complied with whatever common law duty they may have owed to Clark. Second, simple negligence claims are preempted under the FCRA. 15 U.S.C. § 1681h(e) (declaring that "no consumer has bring any action or proceeding in the nature of … negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to

---

[8] Even if inaccuracy isn't, strictly speaking, a statutorily defined element of a claim for unreasonable reinvestigation under 15 U.S.C. § 1681i, Clark would nevertheless be required to prove causation and damages, *see* 15 U.S.C. § 1681o(a)(1) (requiring actual damages sustained by the consumer), and it is difficult to conceive how Clark could possibly show actual damages if the consumer reports contained accurate information from Saxon.

a consumer reporting agency, … except as to false information furnished with malice or willful intent to injure such consumer").

Like Clark's negligence claims, his claim under LUTPA against Saxon is statutorily barred. *See* La. R.S. 51:1406(1) (exempting "any licensee of the Office of Financial Institutions" and "actions or transactions subject to the jurisdiction of … [Louisiana's] commissioner of financial institutions…" from coverage under LUTPA); (Walker Aff., Doc. 56-8, at 11, ¶ 51). His LUTPA claims against the national credit agencies all fail because he did not sue them until January 12, 2011, long after the one year statute of limitations ran, since all the factual allegations occur in 2007 and 2008. *See* La. R.S. 51:1409(E) (one year prescriptive period for private enforcement actions "running from the time of the transaction or act which gave rise to" the action). His fraud claims against these defendants fail for the same reason. *See* La. C.C. art. 3492 (one year liberative prescriptive period for delictual actions); *Clark v. Constellation Brands, Inc.*, 348 Fed.Appx. 19, 21-22 (5th Cir. 2009) (holding fraud prescription runs from date of injury).

Finally, Clark's fraud claim against Saxon fails because he has simply introduced no evidence to show Saxon made intentional misrepresentations to him. Additionally, Clark had actual knowledge of the facts surrounding Saxon's alleged fraud throughout 2008 and at the latest on December 12, 2008, when he filed a Better Business Bureau complaint against Saxon. (*See* Doc. 56-30). Clark did not file suit until February 2010, outside the one year limitations period. For these reasons and more, Clark fails to introduce a genuine dispute of material fact on any of his claims against the defendants.

V.

Accordingly, the motions for summary judgment (Docs. 55, 59, 60 & 63) filed by defendants against plaintiff Henry Clark are hereby GRANTED.

The motion to strike (Doc. 73) is DENIED as moot.

Signed in Baton Rouge, Louisiana, on May 15, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**